UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 22-CV-61905-RAR

**KEVIN D. MORNINGSTAR**,

    Plaintiff,

v.

**CITY OF HOLLYWOOD**,

    Defendant.
_____/

**ORDER GRANTING IN PART DEFENDANT'S MOTION
FOR SUMMARY JUDGMENT AND REMANDING CASE**

**THIS CAUSE** comes before the Court upon the Motion for Summary Judgment ("Motion"), [ECF No. 43], filed by Defendant City of Hollywood. Having carefully considered the Motion; Defendant's Statement of Material Facts ("DSOMF"), [ECF No. 44]; Plaintiff's Response in Opposition to the Motion, [ECF No. 59]; Plaintiff's Statement of Material Facts and accompanying exhibits ("PSOMF"), [ECF Nos. 52, 58, 59]; Defendant's Reply in support of the Motion, [ECF No. 63]; the record; and applicable case law, it is hereby

**ORDERED AND ADJUDGED** that Defendant's Motion, [ECF No. 43], is **GRANTED IN PART** as to Counts II and III of the Complaint and Count I of the Complaint is **REMANDED** for the reasons stated herein.

**BACKGROUND**

Plaintiff suffers from a panic disorder and was diagnosed with this condition prior to September 2021. DSOMF ¶¶ 15–16; PSOMF ¶¶ 15–16. Plaintiff's maltipoo-breed dog, Annie, received training from Servicedog Training School International, an online school, to assist Plaintiff with managing his condition. DSOMF ¶¶ 10–14; PSOMF ¶¶ 10–14. Annie completed

her training course in April 2021, a few months before the present incident. DSOMF ¶ 14; PSOMF ¶ 14.

On September 28, 2021, Plaintiff, a Pennsylvania resident, visited Hollywood Beach for vacation and brought Annie with him. DSOMF ¶¶ 15–16; PSOMF ¶¶ 15–16. While at the municipal beach area with Annie, Plaintiff was approached by Officer Ryan McKirchy of the City of Hollywood Police Department. DSOMF ¶ 19; PSOMF ¶ 19. Officer McKirchy informed Plaintiff that dogs were prohibited at that portion of the beach, to which Plaintiff responded that Annie was a service animal and exempt from such prohibitions. DSOMF ¶ 20; PSOMF ¶ 20. After disagreement ensued between the two as to whether Annie was truly a service animal, Officer McKirchy issued Plaintiff a citation for violating a city ordinance against having dogs on the beach—and cited "conflicting statements" by Plaintiff as the basis for the citation. DSOMF ¶ 23; PSOMF ¶ 23. The very next day, Plaintiff returned to the same beach with Annie, where they were again stopped by Officer McKirchy. DSOMF ¶¶ 25–26; PSOMF ¶¶ 25–26. Officer McKirchy issued Plaintiff a second citation. *Id.*

Shortly thereafter, Plaintiff and/or his partner called the City of Hollywood Police Department to make complaints about the situation—and the department cancelled the second citation. DSOMF ¶¶ 27–28; PSOMF ¶¶ 27–28. On April 13, 2022, the City of Hollywood filed a nolle prosequi for the first citation—thereby dismissing it. DSOMF ¶ 30; PSOMF ¶ 30.

On July 1, 2022, Plaintiff filed a complaint with the Florida Commission on Human Relations ("Commission"). DSOMF ¶ 31; PSOMF ¶ 31. The Commission sent Plaintiff a Notice of Right to Amend informing him that the Hollywood municipal beach was not a place of public accommodation and offering him until August 30, 2022 to amend his complaint. DSOMF ¶ 32; PSOMF ¶ 89. When Plaintiff did not amend his complaint, the Commission dismissed it. DSOMF

¶¶ 33–34; PSOMF ¶¶ 33–34.  Plaintiff did not receive the dismissal because the Commission sent it to the wrong address.  PSOMF ¶¶ 91–92.  Plaintiff did not seek an administrative hearing with the Commission after his complaint was dismissed.  DSOMF ¶ 35; PSOMF ¶ 35.

In March 2023, Plaintiff returned to Hollywood Beach while on vacation.  DSOMF ¶ 36; PSOMF ¶ 36.  Although Plaintiff and Annie were approached on multiple occasions by City of Hollywood Police Department officers, the officers allowed Plaintiff to continue about his day after being informed that Annie was a service animal.  DSOMF ¶¶ 38–39; PSOMF ¶¶ 38–39.

Plaintiff originally filed his Complaint in the Seventeenth Judicial Circuit in and for Broward County, Florida.  [ECF No. 1].  In his Complaint, Plaintiff advances three causes of action: Violation of Fla. Stat. § 413.08 (Count I); Violation of Title II of the Americans with Disabilities Act ("ADA") (Count II); and Violation of the Rehabilitation Act of 1973 ("RA") (Count III).  [ECF No. 1-1].  Defendant then removed the case to federal court on the basis of federal question jurisdiction under 28 U.S.C. § 1331.  [ECF No. 1-2]; *see also* Removal Status Report, [ECF No. 7].  Defendant now moves for summary judgment on all three Counts.

## **LEGAL STANDARD**

Summary judgment is rendered if the pleadings, discovery, disclosure materials on file, and any affidavits show there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law.  *See* FED. R. CIV. P. 56(a), (c).  An issue of fact is "material" if it might affect the outcome of the case under governing law.  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  It is "genuine" if the evidence could lead a reasonable factfinder to find for the non-moving party.  *See id.*; *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).  At summary judgment, the Court views the evidence "in the light most favorable to the nonmoving party," *Stewart v. Happy Herman's Cheshire Bridge, Inc.*, 117 F.3d 1278, 1285

(11th Cir. 1997) (citation omitted), the moving party bears the burden of proving the absence of a genuine issue of material fact, and all factual inferences are drawn in favor of the non-moving party. *See Allen v. Tyson Foods, Inc.*, 121 F.3d 642, 646 (11th Cir. 1997).

If there are any factual issues, summary judgment must be denied, and the case proceeds to trial. *See Whelan v. Royal Caribbean Cruises Ltd.*, No. 12-22481, 2013 WL 5583970, at *2 (S.D. Fla. Aug. 14, 2013). Furthermore, when the parties "agree on the basic facts, but disagree about the inferences that should be drawn from these facts[,]" summary judgment "may be inappropriate." *Id.* However, "[a] mere 'scintilla' of evidence" in support of the non-movant's position will not suffice. *Walker v. Darby*, 911 F.2d 1573, 1577 (11th Cir. 1990).

## **ANALYSIS**

Defendant argues that Count I fails because Fla. Stat. § 413.08 does not provide a private right of action—but even if it did, Plaintiff has failed to exhaust his administrative remedies as required by the Florida Civil Rights Act, Fla. Stat. § 760.01 *et seq.* ("FCRA"). Mot. at 7–10. Defendant further argues that Counts II and III fail because Plaintiff's claim for injunctive relief under the ADA and the RA has been rendered moot and Plaintiff cannot establish entitlement to compensatory damages. *Id.* at 11–17.[1]

The Court begins by addressing Counts II and III—the basis for this Court's federal question jurisdiction. As explained below, Plaintiff's claim for injunctive relief under Counts II and III is moot, and Plaintiff cannot establish entitlement to compensatory damages under either Count. Consequently, entry of summary judgment in favor of Defendant on both Counts is

---

[1] The Court notes that the parties do not address or appear to dispute that Officer McKirchy violated the ADA and RA by issuing citations to Plaintiff. Instead, the briefing focuses on the remedies available for said violation: injunctive relief and compensatory damages. Accordingly, the Court will assume—without deciding—that a violation of the ADA and RA transpired for purposes of adjudicating the Motion.

warranted. And, given the disposition of Counts II and III, the Court is left without subject matter jurisdiction over this removed matter—thereby requiring remand back to state court to address Count I, the only remaining Count in the Complaint.

## I. Defendant Is Entitled to Summary Judgment on Counts II and III.[2]

In Counts II and III of his Complaint, Plaintiff seeks declaratory and injunctive relief, as well as compensatory damages, under both the ADA and the RA. *See* [ECF No. 1-1] at 23–24. As explained below, the City's voluntary cessation of the offending conduct asserted in the Complaint—coupled with Plaintiff's failure to establish deliberate indifference as required to seek damages under the ADA and RA—compel the entry of summary judgment in favor of Defendant on both Counts.

### A. *Plaintiff's claim for injunctive relief is moot.*

"The doctrine of mootness derives directly from the case-or-controversy limitation [found under Article III of the Constitution] because 'an action that is moot cannot be characterized as an active case or controversy.'" *Al Najjar v. Ashcroft*, 273 F.3d 1330, 1335 (11th Cir. 2001) (quoting *Adler v. Duval Cnty. Sch. Bd.*, 112 F.3d 1475, 1477 (11th Cir. 1997)). However, "mere voluntary cessation of a challenged practice does not render a case moot." *Jews for Jesus, Inc. v. Hillsborough Cnty. Aviation Auth.*, 162 F.3d 627, 629 (11th Cir. 1998) (citing *Cnty. of L.A. v. Davis*, 440 U.S. 625, 631 (1979)). Voluntary cessation only moots a case "if subsequent events made it absolutely clear that the allegedly wrongful behavior could not reasonably be expected to

---

[2] As Plaintiff's ADA and RA claims are identical in form and seek the same compensatory damages and injunctive relief, the Court will address these claims together. *See Boyer v. Tift County Hosp. Auth.*, No. 7:06-cv-027 (HL), 2008 WL 2986283, *8 (M.D. Ga. 2008) ("The ADA and the RA are similar in substance and, with the exception of the RA's federal funding requirement, cases interpreting either are applicable and interchangeable.").

recur." *Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167, 189 (2000) (quoting *United States v. Concentrated Phosphate Exp. Ass'n*, 393 U.S. 199, 203 (1968)).

In cases where the defendant is a government actor, "there is a rebuttable presumption that the objectionable behavior will not recur." *Troiano v. Supervisor of Elections*, 382 F.3d 1276, 1283 (11th Cir. 2004). "[T]he government actor is entitled to this presumption only after it has shown unambiguous termination of the complained of activity." *Doe v. Wooten*, 747 F.3d 1317, 1322 (11th Cir. 2014) (citing *Harrell v. The Fla. Bar*, 608 F.3d 1241, 1267–68 (11th Cir. 2010)). If the government actor can meet this burden, then a challenge to its policy "will be moot in the absence of some reasonable basis to believe that the policy will be reinstated if the suit is terminated." *Troiano*, 382 F.3d at 1285. The Eleventh Circuit considers three factors during both the initial inquiry regarding termination and the subsequent inquiry as to whether the challenged conduct will reoccur:

> (1) whether the termination of the offending conduct was unambiguous; (2) whether the change in government policy or conduct appears to be the result of substantial deliberation, or is simply an attempt to manipulate jurisdiction; and (3) whether the government has consistently applied a new policy or adhered to a new course of conduct.

*Wooten*, 747 F.3d at 1323. Other relevant factors may include the timing and content of the cessation decision, and whether the challenged behavior was a continuing practice. *Id.*

Here, Defendant argues that Plaintiff's claim for injunctive relief is moot because the single officer who issued Plaintiff the two tickets has been removed from beach duty; the City of Hollywood has provided legal guidance and training to its officers regarding proper procedures for interacting with an individual utilizing a service animal; and Plaintiff has since returned to Hollywood Beach and was not cited by any of the numerous officers who approached him because he explained that Annie is a service animal. Mot. at 14–15; Reply at 5–6. Plaintiff responds that

Defendant's argument is "steeped in inference and assumption, requiring the Court to assume that Morningstar's 'experience' on the beach in 2023 proves the wrongful behavior Morningstar experienced in 2021 will never reoccur" and claims that "[n]owhere in its entire argument (or even in its Motion) does the City make any claim of having affirmatively changed its conduct in any way since the events at issue arose." Resp. at 14–15.  The Court disagrees.

As Plaintiff correctly points out, the City bears the burden of showing "unambiguous termination of the complained of activity." *Wooten*, 747 F.3d at 1322.  Only then will the challenge to its policy "be moot in the absence of some reasonable basis to believe that the policy will be reinstated if the suit is terminated." *Troiano*, 382 F.3d at 1285.  The record shows that prior to the incident in question, Defendant provided its officers with a "Legal Bulletin," [ECF No. 42-3] at 4, that gave officers guidance on "[d]etermining whether an animal is a service animal" under both the ADA and § 413.08.  After Officer McKirchy failed to utilize this training in September 2021, Defendant re-trained the officers in its beach unit on "ADA regulations for writing tickets." J. Timmons Dep., [ECF No. 52-12], 29:16-30:10.  Officer McKirchy, the sole officer who issued Plaintiff a ticket, is no longer working in the beach unit. *Id.*  Both tickets given to Plaintiff were dismissed—one within a few weeks of issuance and the other within a few months. DSOMF ¶¶ 27–28, 30; PSOMF ¶¶ 27–28, 30.  And, Plaintiff and Annie have since been approached by multiple City of Hollywood Police Department officers, all of whom allowed Plaintiff to continue about his day after being informed that Annie was a service animal in accordance with both the Legal Bulletin and the subsequent ADA training. DSOMF ¶¶ 38–39; PSOMF ¶¶ 38–39.  The Court finds that, when read as a whole, the record supports the City's unambiguous termination of the complained of activity.  *See Wooten*, 747 F.3d at 1323 (emphasizing that a court should consider whether the change in government policy appears to be the result of substantial

deliberation or is simply an attempt to manipulate jurisdiction and whether the government has consistently applied a new policy or adhered to a new course of conduct); *see also Troiano*, 382 F.3d at 1283 ("When government laws or policies have been challenged, the Supreme Court has held almost uniformly that cessation of the challenged behavior moots the suit.").

Given that Defendant has met its burden in showing the unambiguous cessation of the complained of activity, the Court must now consider whether there is "some reasonable basis to believe that the policy will be reinstated if the suit is terminated." *Troiano*, 382 F.3d at 1285. The Court does not find any support for reinstatement in the record. In fact, Defendant's subsequent conduct—namely, giving additional training to its officers on disability law and dismissing the two citations against Plaintiff—demonstrate its commitment to reform. Accordingly, the Court finds that Plaintiff's claim for injunctive relief in Counts II and III is moot.

### B. *Plaintiff's failure to establish deliberate indifference forecloses his claim for compensatory damages.*

Generally, a plaintiff may seek only injunctive relief under the ADA and the RA. *Silberman v. Miami Dade Transit*, 927 F.3d 1123, 1134 (11th Cir. 2019). To obtain monetary damages, a plaintiff must also show the defendant engaged in intentional discrimination, which requires a showing of "deliberate indifference." *Id*. (citing *Liese v. Indian River Cty. Hosp. Dist.*, 701 F.3d 334, 348 (11th Cir. 2012)). Deliberate indifference requires a showing that the "defendant knew that harm to a federal protected right was substantially likely and . . . failed to act on that likelihood." *Liese*, 701 F.3d at 344. This "is an exacting standard which requires showing more than gross negligence." *McCullum v. Orlando Reg'l Healthcare Sys., Inc.*, 768 F.3d 1135, 1147 (11th Cir. 2014) (citation and quotations omitted).

Additionally, when a plaintiff seeks to bring such a claim against a government entity, the plaintiff must show that an "official who at a minimum has authority to address the alleged

discrimination and to institute corrective measures on the [entity's] behalf" had "actual knowledge of discrimination in the [entity's] programs and failed to adequately respond." *Id.* at 349. The official must be "high enough up the chain of command that his acts constitute an official decision by the [entity] not to remedy the misconduct." *J.S., III by and through J.S. Jr. v. Houston Cnty. Bd. of Educ.*, 877 F.3d 979, 987 (11th Cir. 2017). The official in question must have the knowledge of and authority to correct an entity's discriminatory practices. *Silberman*, 927 F.3d at 1134.

Plaintiff argues that Officer McKirchy, Sergeant Campbell, the City Attorney, and the City Commission had actual knowledge that discrimination was substantially likely and failed to adequately respond. Resp. at 19–20. Starting first with Officer McKirchy, there is no evidence in the record to support a finding that he had a level of seniority or substantial supervisory authority such that "his acts constitute an official decision by the [City] not to remedy the misconduct." *Houston Cty. Bd. of Educ.*, 877 F.3d at 987; *see also Liese*, 701 F.3d at 350; *Doe v. Sch. Bd. of Broward Cty., Fla.*, 604 F.3d 1248, 1255 (11th Cir. 2010). Indeed, like the city bus drivers in *Silberman* who refused to allow the plaintiff to board a bus with his service animal, McKirchy—as a simple citing officer—did not possess "discretion at a key decision point *in the administrative process*." *Silberman*, 927 F.3d at 1136 (citation and quotation omitted); *see also Liese*, 701 F.3d at 350 (explaining that "[t]he 'key decision point' language reflects the practical reality that, while some decisions are technically subject to review by a higher authority, such a review is not part of the entity's ordinary decision-making process.") (citing *Doe*, 604 F.3d at 1256-57).

Additionally, there is no dispute of material fact that Officer McKirchy's conduct fell short of surpassing gross negligence—an "exacting standard." *McCullum*, 768 F.3d at 1147 (citing *Doe*, 604 F.3d at 1259). In other words, a citation issued on the basis of "conflicting statements" as to what services Annie was trained to perform, *see* DSOMF ¶ 23; PSOMF ¶ 23, does not rise to

the level of deliberate indifference. *See Liese*, 701 F.3d at 344 (finding deliberate indifference where a doctor laughed at a deaf patient's request for an interpreter and attempted to communicate instructions about a complex surgical procedure via pantomime); *McCullum*, 768 F.3d at 1147 (finding no deliberate indifference when hospital denied deaf patient's request for an interpreter but still communicated effectively with the patient).

Moving on to Sergeant Campbell, the parties do not dispute that he has sufficient authority to make decisions on behalf of Defendant. However, Plaintiff must also show that he had "actual knowledge of discrimination in the [City's] programs and failed to adequately respond." *Liese*, 701 F.3d at 344. Plaintiff argues that Campbell "only chose to 'drop' or 'not file' the September 29, 2021 citation" which could create an inference that "Campbell knew the citations were issued in violation of the ADA and RA." Resp. at 19. But Plaintiff offers no other evidence that Sergeant Campbell knew there was a substantial likelihood of a federally protected right being violated and failed to act on that likelihood. *See Liese*, 701 F.3d at 344 (denying summary judgment where doctor had "apparent knowledge" that the deaf plaintiff needed an interpreter based on his own firsthand observations of the plaintiff not understanding pantomime and "deliberate[ly] refus[ed] to provide that aid"). Plaintiff, for reasons unknown, elected not to depose Sergeant Campbell or otherwise develop a record to support a finding of intentional discrimination. *See Walker*, 911 F.2d at 1577 ("A mere 'scintilla' of evidence" in support of the non-movant's position will not defeat summary judgment."). Moreover, the record reflects that Sergeant Campbell's officers were provided with appropriate training on disability law. [ECF No. 42-3] at 4. Thus, viewing the limited evidence in the light most favorable to Plaintiff, there is no genuine dispute of material fact as to the absence of deliberate indifference by Sergeant Campbell.

Turning now to the City Attorney and the City Commission, the Court is again faced with a dearth of evidence. Plaintiff argues that the "decision to file the municipal prosecution [of the September 28, 2021 citation] and to pursue it for six months was made by the City Attorney's Office which serves at the behest of the City Commission." Resp. at 20. Plaintiff argues that "[f]rom this the jury can infer that the City knowingly filed charges based on a citation that violated the ADA and RA and only dismissed after Morningstar incurred the expense of retaining counsel." *Id.* Once again, however, Plaintiff offers no other basis to show that any actor from the City Commission or the City Attorney's Office knew there was a substantial likelihood of a federally protected right being violated and failed to act on that likelihood. Nor is there any evidence in the record that any member of the City Commission or City Attorney's Office <u>deliberately</u> pursued the prosecution of Plaintiff for six months. *See Liese*, 701 F.3d at 344; *see also Delano-Pyle v. Victoria Cnty.*, 302 F.3d 567, 574 (5th Cir. 2002) ("A plaintiff asserting a private cause of action for violations of the ADA or the RA may only recover compensatory damages upon a showing of intentional discrimination."). Additionally, for reasons unknown, Plaintiff elected not to depose Assistant City Attorney Alyin Ruiz or otherwise develop a factual record to support a finding of intentional discrimination. *See Walker*, 911 F.2d at 1577. Again, viewing this limited evidence in the light most favorable to Plaintiff, there is no genuine dispute of material fact as to the absence of deliberate indifference by the City Attorney's Office and the City Commission—or any other City of Hollywood actor. Accordingly, Plaintiff has failed to establish entitlement to compensatory damages under Counts II and III.

## II. Remand Is Warranted as to Count I.

Given that Defendant is entitled to summary judgment on Plaintiff's claims under the ADA and RA, only his FCRA claim remains. "The doctrine of supplemental jurisdiction . . . permits

'federal courts to decide certain state-law claims involved in cases raising federal questions' when doing so would promote judicial economy and procedural convenience." *Ameritox, Ltd. v. Millennium Labs., Inc.*, 803 F.3d 518, 530 (11th Cir. 2015) (quoting *Carnegie–Mellon Univ. v. Cohill*, 484 U.S. 343, 348–49 (1988)). This doctrine, codified at 28 U.S.C. § 1367, "grants federal courts the power to exercise jurisdiction over claims 'that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.'" *Id.* at 531 (quoting 28 U.S.C. § 1367(a)). Although section 1367 "mandates that district courts—at least initially—exercise jurisdiction over those supplemental claims that satisfy the case or controversy requirement," *id.*, a court has the authority to dismiss any pendant state law claims if "the district court has dismissed all claims over which it has original jurisdiction," 28 U.S.C. § 1367(c).

      Here, because the Court has dismissed Plaintiff's federal ADA and RA claims, it declines to exercise jurisdiction over Plaintiff's state law claim pursuant to section 1367(c)(3). *See Raney v. Allstate Ins. Co.*, 370 F.3d 1086, 1088–89 (11th Cir. 2004) ("The decision to exercise supplemental jurisdiction over pendant state claims rests within the discretion of the district court.") (citations omitted). And because this case was removed from state court, remand is appropriate here. *See McGee v. Solic. Gen. of Richmond Cnty., Ga.,* 727 F.3d 1322, 1326 (11th Cir. 2013) (vacating district court's dismissal as moot and instructing district court to remand the case to state court); *Ladies Memorial Ass'n, Inc. v. City of Pensacola*, 34 F.4th 988, 994 (11th Cir. 2022) ("The problem in this case can be boiled down to the fact that the District Court dismissed a removed case rather than remanding it back to state court when it did not have subject matter jurisdiction because the plaintiffs lacked standing.").

## CONCLUSION

Based on the foregoing, it is hereby **ORDERED AND ADJUDGED** that the City's Motion, [ECF No. 43], is **GRANTED IN PART** as to Counts II and III of Plaintiff's Complaint. A separate final judgment will be entered as to these claims pursuant to Rule 58 of the Federal Rules of Civil Procedure. The remaining state law claim in Count I of the Complaint is **REMANDED** to the Circuit Court of the Seventeenth Judicial Circuit in and for Broward County, Florida. The Clerk of Court is **DIRECTED** to forward a copy of this Order and the Court's Final Judgment to the Clerk of Court for the Seventeenth Judicial Circuit in and for Broward County, Florida. Any pending motions are **DENIED as moot**. The Clerk shall **CLOSE** this case.

**DONE AND ORDERED** in Miami, Florida, this 18th day of March, 2024.

_____
**RODOLFO A. RUIZ II**
**UNITED STATES DISTRICT JUDGE**